UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MALCOLM COLEMAN,<br>　　　　Plaintiff,<br>　vs.<br>W. ROGERS, Correctional Food Manager,<br>　　　　Defendant. | No. C 11-3463 SBA (PR)<br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND ADDRESSING PENDING MOTIONS**<br>Dkt Nos. 29, 41, 43, 45, 46, 47 |

Plaintiff, an inmate at the Correctional Training Facility ("CTF"), brings the instant pro se action under 42 U.S.C. § 1983, alleging that he was served contaminated food while incarcerated. The only remaining party-defendant is CTF Correctional Food Manager, W. Rogers ("Defendant"), against whom Plaintiff has alleged a claim for deliberate indifference to health or safety. Dkt. 11. The parties are presently before the Court on Defendant's Motion for Summary Judgment. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS the motion for the reasons set forth below.

**I.     BACKGROUND**

　　**A.     FACTUAL BACKGROUND**

　　The following facts are undisputed unless otherwise indicated. This action pertains to allegedly unsanitary procedures for feeding inmates at CTF during lockdowns or modified programming from approximately January 2010 through February 2011. Dkt. 11 at 7.[1] Modified programming is instituted in response to safety incidents and concerns, quarantine due to medical concerns, and/or lack of staff in a housing unit or "Wing."

---

[1] Page numbers refer to those assigned by the Court's electronic filing system and not those assigned by the parties.

Lopez Decl. ¶ 4; Rogers Decl. ¶ 15. During modified programming, "cell-feedings" are implemented, and inmates are not permitted out of their cells to eat their meals at the CTF dining facility. Lopez Decl. ¶ 5; Rogers Decl. ¶ 15. Instead, inmates are served and must consume their meals from inside their cells. Id.

On or around March 17, 2010, Plaintiff allegedly found a "long strand of blonde hair" on the food tray provided to him in his cell while his cell Wing was on modified programming. Dkt. 11 at 7. The following day, Plaintiff claims that he noticed "hair, mop strings, and other trash particles" on the stairs leading to the tiers above his cell, as well as "dust, trash, mice and rat feces" on higher tiers. Id. at 7-8. Plaintiff presumes that the hair in his food originated from this contamination, which he alleges is "kicked up" over the tiers and onto food trays that are being distributed below during cell-feedings. Id. at 5. In addition, Plaintiff alleges that the inmate-workers responsible for distributing food trays during cell-feedings are not trained in "food preparation, safety, and sanitation," and are not always cleared by the medical unit for these positions. Id.

According to CTF procedures, in preparation for cell-feedings wing-officers and designated inmate-workers obtain carts from the Culinary Department that contain the food to be served. Lopez Decl. ¶ 7. The inmate-workers push the carts to the Wings, where the food is individually portioned. Lopez Decl. ¶ 8; Rogers Decl. ¶ 17. While working on the first tier of the Wings, the inmate-workers then prepare the individual trays to be distributed to the inmates in the unit. Lopez Decl. ¶ 11; Rogers Decl. ¶¶ 18-19, 24. During the cell-feeding process, only the inmate-workers and wing-officers travel along the tiers to hand out food trays. Lopez Decl. ¶ 13. No other inmates are permitted to leave their cells. Id. In 2010, inmates complaining of foreign objects in their food were provided a new food tray or the contaminated food item was replaced by the wing-officer. Id. ¶¶ 19, 21. During the cell-feeding process, inmate-workers and wing-officers wear aprons, hair-nets, and gloves to ensure sanitation. Id. ¶ 17. CTF policy requires inmate-workers to be medically cleared and to be in possession of "food handling chronos." Id. ¶ 18.

Plaintiff complained regarding the unsanitary cell-feeding practices with CTF staff, who advised him to file a CDCR 602 inmate appeal ("602 appeal"). Dkt. 11 at 8. Plaintiff submitted a 602 appeal documenting his concerns, and was subsequently interviewed by Defendant on April 12, 2010. Id., Dkt. 1 at 31-32. At that time, Defendant was the Assistant Correctional Food Manager. Rogers Decl. ¶ 1. His duties included maintaining the health and sanitation within the Culinary Department, though not specifically within the Wings. Id. ¶ 2.

Plaintiff alleges that during the interview, he explained his apprehension regarding the contaminated conditions in his Wing. Dkt. 11 at 5-6, 8. Plaintiff also states that he informed Defendant of his concerns that the inmate-workers responsible for distributing food during modified programming were neither trained in proper food-handling practices nor medically cleared to handle food. Id. at 8. Plaintiff pointed to dust particles floating in the air, and noted that trash, mice or rat feces or any other contaminate could be kicked over the second or third tiers to the tiers below. Id. at 8-9. During the course of this discussion, Correctional Officer Lopez stated that this problem had been solved in another part of the prison by putting a "3 inch strip of sheet metal along the outer bottom base of the tiers, which prevented trash from going over the tier and into the food." Id. at 9. Plaintiff claims that Defendant "stated he would address Plaintiff's concerns"; however, Defendant failed to take any action to modify the cell-feeding process. Id. at 9-11.

The record shows that after Defendant interviewed Plaintiff, he drafted a First Level Reviewer's Response to Plaintiff's 602 appeal on April 15, 2010. Dkt. 1 at 26-27. Defendant indicated that Plaintiff had requested: that the Wings be "brought up to housing standards," that staff and inmate-workers be medically cleared; that inmates be fed in the dining halls; that no reprisals shall result from filing his 602 appeal; and that he be provided evidence that the Wings are sanitary and that food handlers have been medically cleared. Id. at 26. Defendant answered Plaintiff's requests in five parts, as follows:

1. Food Services has and will continue to take corrective action by training staff, randomly visiting and monitoring cell-feeding in order to ensure compliance with Health and Safety Regulations, the California Uniform Retail Food Facilities Laws (CURFFL) and Hazardous Analysis Critical Control Points (HACCP).

2. All inmates arriving at CTF-Soledad are cleared for food handling and you have not provided or identified any specific individual in order to verify or substantiate allegations of inmates not being medically cleared to serve food.

3. During institutional emergencies, the Warden has overall responsibility for cell feeding. The Unit Captain has overall responsibility for ensuring compliance with Operational Procedure ["O.P."] #46[2] (please see attached).

4. No reprisals shall be taken for the good faith use of or responsible participation in the appeal procedure.

5. The Food Service Section complies with Health and Safety codes and Departmental Requirements.

Id. Based on the foregoing, Defendant denied Plaintiff's appeal at the First Level of Review. Id. at 27.

Plaintiff appealed his grievance to the Second Level of Review, which was partially granted. Id. at 23-24. Aside from Petitioner's request to be served food in the dining halls during modified programming, which was denied, all his other requests were "granted." The Second Level Reviewer indicated: that the Food Service staff members received weekly training on food preparation, safety and sanitation; that the Food Service Department was in compliance with all local and state requirements; that all inmates and staff have been cleared to handle food; and that monitoring by Correctional Supervising Cooks was taking place and cleaning procedures were being followed to ensure that proper sanitation was being met at the Wings during cell feeding. Id. at 23-24.

Plaintiff was dissatisfied with the partial grant and thus appealed his grievance to the third and final level of appeal, i.e., the Director's Level. Id. at 20-21. Plaintiff's Director's Level appeal was denied, as Petitioner "failed to support his appeal issues with

---

[2] O.P. 46's purpose is to establish and provide guidelines for the operational needs of the prison for cell-feeding. Dkt. 1 at 28-29.

4

sufficient evidence or facts to warrant a modification of the [Second Level of Review decision]." Id. at 20.  The reviewer also concluded that Petitioner had "not presented any evidence that the CTF food handling procedures has had any adverse effect upon his confinement." Id.

Plaintiff alleges that, upon eating the contaminated food that he was served during modified programming, he suffered from "severe discomfort in his throat" accompanied by a "choking sensation" and "sharp jolting pains in his stomach."  Dkt. 11 at 11-13.  According to Plaintiff's medical records, however, he has a pre-existing medical condition known as acid reflux disease.  Lam Decl. ¶ 5.  Plaintiff was diagnosed with this condition prior to the events giving rise to this action.  Id.

In addition, after consuming the allegedly contaminated food, Plaintiff was seen by his primary care physician, Dr. P. Lam, as well as two other physicians at CTF on four separate occasions between September 22, 2010 and December 29, 2011.  Id. ¶¶ 3, 9, Ex. A.  There is no indication in the records generated from those visits that Plaintiff reported or complained of throat-discomfort, choking sensations, stomach pains, or swallowing difficulties after eating the contaminated food.  Id. ¶ 9, Ex. A.

On February 9, 2012, Plaintiff was seen by medical staff regarding complaints of chest pain, which was linked to his acid reflux disease.  Id. ¶ 10, Ex. B.  On at least ten subsequent occasions, Plaintiff was seen by medical staff for conditions relating to that condition.  Id. ¶¶ 10-22.  On September 5, 2013, Dr. Lam examined Plaintiff for an unrelated chronic neck pain problem.  At that time, Plaintiff did not complain about any symptoms resulting from eating the contaminated food.  Id. ¶ 22.

Over the course of Plaintiff's evaluation by medical staff from 2010 through 2013, Dr. Lam has remained his primary care physician.  Dr. Lam opined that "it is [his] medical opinion that there is no indication or link between [Plaintiff]'s acid reflux disease, Esophagitis, Gastritis and the food that was served and consumed at CTF." Id. ¶ 16.

In his opposition, Plaintiff no longer claims that he suffered from symptoms of throat-discomfort, choking sensations, stomach pains, or swallowing difficulties after

5

eating the contaminated food. Instead, Plaintiff now asserts that he has "at least" been able to demonstrate that it is "quite probable" that the contaminated food was the cause of his pre-existing acid reflux disease or that it "substantially exacerbated" his condition. Dkt. 56 at 25.

### B. PROCEDURAL HISTORY

On July 14, 2011, Plaintiff filed this instant action against Defendant, CTF Warden R. Grounds, Appeals Examiner K. Pool, Chief of Inmate Appeals D. Foston, Assistant Warden R. White, and Correctional Food Manager II R. Batiste. Dkt. 1.

On May 12, 2012, the Court issued an Order dismissing Plaintiff's complaint with leave to amend on the ground that it failed to state a claim upon which relief can be granted against any Defendant. The Court explained that Plaintiff had failed to allege:

> (1) one or more situations involving contamination in any particular time frame; (2) any injury that occurred as a result of the contamination; (3) any link between the conduct of a named Defendant to this claim; and (4) that the named Defendants acted with deliberate indifference regarding Plaintiff's health and safety.

Dkt. 7 at 2-3.

Plaintiff timely filed an amended complaint on August 1, 2012. Dkt. 11. On January 28, 2013, the Court, upon reviewing the amended complaint, concluded Plaintiff had remedied the deficiencies of the original complaint. Dkt.12. The Court explained:

> First, Plaintiff now alleges that the allegedly contaminating conditions existed from March 17, 2010 up to the time he filed his complaint on July 14, 2011.[3] Second, Plaintiff now alleges that he suffers from throat and gastric problems as a result of the contamination. Third, Plaintiff now alleges that CFM Rogers knew of the allegedly contaminating conditions and said that he would take care of them, thus, indicating that he

---

[3] The Court has since confirmed that the modified programming began approximately in January 2010 and only lasted until February 2011; therefore, the time frame that the allegedly contaminating conditions existed is from January 2010 through February 2011. Dkt. 11 at 7.

6

1    has the authority to establish or to change allegedly unsanitary
     feeding procedures at CTF.

2    Id. at 4 (footnote added).  Thus, the Court found a cognizable Eighth Amendment

3    deliberate indifference claim against Defendant, ordered service upon him, and dismissed

4    the claims against all other Defendants.

5    Defendant has now filed a motion for summary judgment in which he contends that

6    Plaintiff has not shown that he personally participated in the alleged constitutional

7    deprivations.  In addition, Defendant contends that his conduct, i.e., denying Plaintiff's 602

8    appeal and failing to modify the cell-feeding process, did not violate the Eighth

9    Amendment.  Dkt. 29.  Alternatively, Defendant argues that he is entitled to qualified

10   immunity.  Plaintiff has filed his opposition, and Defendant filed his reply to the

11   opposition.  Dkts. 56, 67.

## II.    PRELIMINARY ISSUES

Before addressing the merits of Defendant's motion for summary judgment, the Court first resolves several pending motions filed by Plaintiff.

### A.    MOTION TO APPOINT EXPERT WITNESS

Plaintiff seeks the appointment of a neutral expert under Federal Rule of Evidence 706 to investigate the facts underlying his claim in this action.  The Court has the discretion to appoint an expert and to apportion costs, including the apportionment of costs to one side.  Fed. R. Evid. 706; Ford ex rel. Ford v. Long Beach Unified School Dist., 291 F.3d 1086, 1090 (9th Cir.2002); Walker v. Am. Home Shield Long Term Disability Plan, 180 F.3d 1065, 1071 (9th Cir. 1999).  Here, expert testimony is unnecessary for the Court to fairly evaluate the instant motion.  Moreover, the information which the proposed expert would obtain could have been sought through discovery.  Accordingly, Plaintiff's motion for appointment of an expert witness is DENIED.

### B.    DISCOVERY MOTIONS

Plaintiff filed motions to compel Defendant to produce documents and for the written deposition of a non-party, Dr. Lam, in order to obtain information regarding the

medical care provided to him at CTF. Dkts. 43, 45. Defendant counters that these motions are improper because Plaintiff failed to first meet and confer, in violation of the Federal Rules of Civil Procedure and the Court's Local Rules. Dkt. 44. Defendant's contention is well taken. See Fed. R. Civ. P. 37(a)(2)(A) (providing that a motion to compel must include certification that the movant has in good faith conferred or attempted to confer with non-disclosing party in an effort to secure disclosure without court action); Civ. L.R. 37-1 (same). Since Plaintiff has not complied with these rules, his motion is subject to denial. Tri-Valley CARES v. U.S. Dept. of Energy, 671 F.3d 1113, 1131 (9th Cir. 2012) ("Denial of a motion as the result of a failure to comply with local rules is well within a district court's discretion.").[4] Therefore, Plaintiff's discovery motions are DENIED.

### C. MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff moves the Court to appoint counsel. Dkt. 46. The Ninth Circuit has held that a district court may ask counsel to represent an indigent litigant only in "exceptional circumstances," the determination of which requires an evaluation of both (1) the likelihood of success on the merits and (2) the ability of the plaintiff to articulate his claims pro se in light of the complexity of the legal issues involved. Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991). Plaintiff has been able to present his claims adequately, and the issues are not complex. Accordingly, Plaintiff's motion for appointment of counsel is DENIED.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on some or all of the claims or defenses presented in an action. Fed. R. Civ. P. 56(a)(1). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id.; see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The

---

[4] Moreover, Plaintiff's request for Dr. Lam's written deposition appears to be moot in light Dr. Lam's submission of a declaration which includes information about Plaintiff's medical care at CTF.

movant bears the initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in the record"). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. See Celotex, 477 U.S. at 324; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

"On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting in part Scott v. Harris, 550 U.S. 372, 380 (2007)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. A factual dispute is genuine if it "properly can be resolved in favor of either party." Id. at 250. Accordingly, a genuine issue for trial exists if the non-movant presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted). Only admissible evidence may be considered in ruling on a motion for summary judgment. Orr v. Bank of Am., 285 F.3d 764, 773 (9th Cir. 2002).

### IV. DISCUSSION

#### A. DELIBERATE INDIFFERENCE CLAIM

##### 1. Overview

Under the Eighth Amendment, prison officials must "ensure that prisoners are provided with adequate shelter, food, clothing, sanitation, medical care, and personal safety." Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000). A prison official violates the

Eighth Amendment when he or she responds with deliberate indifference to an inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994). If a prison official knows that an inmate faces a substantial risk of serious harm, yet disregards that risk by failing to take reasonable measures to abate it, he or she may be held liable. Id. at 825. It not enough that a reasonable person would have known of the risk or that a defendant should have known of the risk. Id. at 842. Rather, deliberate indifference is established only where the defendant subjectively "knows of and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir.2004) (internal citation omitted, emphasis added).

The Ninth Circuit has held that under the Eighth Amendment, prisoners need only receive food that is adequate to maintain health—the food need not be tasty or aesthetically pleasing. LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993) (citation omitted). "The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." Id. (citation omitted); see also Green v. Atkinson, 623 F.3d 278, 281 (5th Cir. 2010) ("A single incident of food poisoning or finding a foreign object in food does not constitute a violation of the constitutional rights of the prisoner affected."); Wishon v. Gammon, 978 F.2d 446, 449 (8th Cir. 1992) (food that is routinely served cold or contaminated with foreign objects does not violate the Eighth Amendment when there is no evidence that the food presented an immediate danger to the inmate's health or that his health suffered as a result of the food).

**2.     Analysis**

Viewing the evidence in the light most favorable to Plaintiff, the Court finds that his claims of unsanitary cell-feeding practices at CTF are not sufficiently serious to violate the Eighth Amendment. The record shows that during the modified programming cell-feedings conducted during 2010-2011, Plaintiff was provided with adequate food that met his basic needs. Plaintiff's claim that he found hair in his food, without more, falls short of the "extreme deprivation" required to support a constitutional violation. Cf. Foster, 554

F.3d at 812 (denial of sixteen meals over twenty-three days was "a sufficiently serious deprivation because food is one of life's basic necessities"). Even if Plaintiff's food occasionally contained foreign objects such as dust and hair, that alone does not amount to a constitutional violation. See Farmer, 511 U.S. at 835-36 & n.4; Estelle v. Gamble, 429 U.S. 97, 106 (1976); see e.g., LeMaire, 12 F.3d at 1456. The record confirms that the conditions Plaintiff allegedly encountered during the subject cell-feeding at CTF were neither sufficiently substantial nor severe to rise to the level of an Eighth Amendment violation.

In addition, there is no evidence that Defendant, whose conduct consists of denying Plaintiff's appeal and failing to modify the cell-feeding process, was aware of facts permitting an inference that a substantial risk of serious harm existed, or that he in fact drew the inference and nevertheless failed to act. See Farmer, 511 U.S. at 837. Rather, the undisputed evidence shows that Defendant interviewed Plaintiff in response to his concerns, participated in a walk-through to assess the problems in Plaintiff's Wing, and addressed Plaintiff's concerns by detailing in his First Level Appeal Response that cell-feeding would be continued to be monitored in order to ensure its compliance with Health and Safety codes and Departmental Requirements. Although CTF declined Plaintiff's demand that prisoners be allowed to consume their meals in the dining hall during modified programming, the Court notes that the judiciary should not interfere with day-to-day prison administrative decisions such as those made by Defendant. See Bell v. Wolfish, 441 U.S. 520, 562 (1979); Wright v. Rushen, 642 F.2d 1129, 1132 (9th Cir. 1981) (federal courts instead should avoid enmeshing themselves in the minutiae of prison operations in the name of the Eighth Amendment).

Finally, Plaintiff fails to show a nexus between his alleged medical symptoms and the alleged contaminated food he consumed. In fact, Plaintiff admits that the symptoms he allegedly suffered from the contaminated food no longer exist. Dkt. 11 at 11-13. Instead, in his opposition, Plaintiff now only claims that it "quite probable" that contaminated food was the cause of his pre-existing acid reflux disease. Dkt. 56 at 25. To establish a

constitutional violation, there must be a causal connection or nexus between Plaintiff's claims and his alleged injuries; in this case, there is none. See Van Ort v. Estate of Stanewich, 92 F.3d 831, 837 (9th Cir. 1996). Plaintiff has not established a link, and cannot merely rest on establishing only a "probable" link, between his medical symptoms and the alleged contaminated food at CTF.

Dr. Lam, Plaintiff's treating physician, has opined that the symptoms and medical conditions Plaintiff suffered were not caused by any alleged contaminated food at CTF. Decl. Lam ¶ 16, 23. At most, Plaintiff speculates, without foundation, that alleged contamination "quite probably" exacerbated his existing condition. This tenuous and unsupported proposition is insufficient to avoid summary judgment. See Rodriguez v. Airborne Express, 265 F.3d 890, 902 (9th Cir. 2001) ("self-serving affidavits are cognizable to establish a genuine issue of material fact so long as they state facts based on personal knowledge and are not too conclusory.") In any event, the records submitted demonstrate that many of Plaintiff's alleged symptoms are attributable his other pre-existing medical conditions, including Esophagitis and Gastritis. Id. ¶¶ 5, 6, 8, 10, 13, 14, 18.

Viewing the evidence and the inferences drawn therefrom in the light most favorable to Plaintiff, the Court finds that there is no genuine issue of material fact regarding his claim under the Eighth Amendment. Accordingly, Defendant is entitled to summary judgment.[5]

**B.    QUALIFIED IMMUNITY**

As an alternative basis for summary judgment, Defendant contends that he is entitled qualified immunity. Dkt. 29 at 16. "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably

---

[5] Plaintiff's amended complaint only appears to allege a claim under 42 U.S.C. § 1983. To the extent that Plaintiff's allegations could be construed as a claim for negligence, the Court declines to assert supplemental jurisdiction over such claim. 28 U.S.C. § 1367(c)(3); Sanford v. MemberWorks, Inc., 625 F.3d 550, 561 (9th Cir. 2010).

misapprehends the law governing the circumstances she confronted." Brosseau v. Haugen, 543 U.S. 194, 198 (2004). The issue of qualified immunity generally entails a two-step process, which requires the court to first determine whether the defendant violated a constitutional right, and then to determine whether that right was clearly established. Saucier v. Katz, 533 U.S. 194, 201-02 (2001).

In Pearson v. Callahan, 555 U.S. 223 (2009), the Supreme Court modified the Saucier test and "gave courts discretion to grant qualified immunity on the basis of the 'clearly established' prong alone, without deciding in the first instance whether any right had been violated." James v. Rowlands, 606 F.3d 646, 650-51 (9th Cir. 2010) (discussing Saucier standard after Pearson). The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Saucier, 533 U.S. at 202; see, e.g., Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1049-50 (9th Cir. 2002) (court may grant qualified immunity by viewing all of the facts most favorably to plaintiff and then finding that under those facts the defendants could reasonably believe they were not violating the law).

The Court has concluded above that there was no constitutional violation pertaining to Plaintiff's deliberate indifference claim regarding the cell-feeding procedures at CTF. Thus, on these facts, viewed in the light most favorable to Plaintiff, Defendant prevails as a matter of law on his qualified immunity defense because the record establishes no Eighth Amendment violation. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

But even if a constitutional violation had occurred, Defendant could have reasonably believed that his actions—i.e., denying the appeal and failing to modify the cell-feeding process—were lawful. See Estate of Ford, 301 F.3d at 1049-50. Although Defendant tacitly acknowledges that Plaintiff's right to adequate food was clearly established during the relevant period, he contends that, based on the information available, his denial of Plaintiff's 602 appeal at the First Level of Review was reasonable in light of evidence that proper food-service and cell-feeding procedures were being

followed. Based on the record presented, the Court is persuaded that a reasonable prison official in Defendant's position could have reasonably believed that actions did not violate Plaintiff's clearly established constitutional rights. Accordingly, Defendant is entitled to qualified immunity as an alternative basis for summary judgment.

## V. **CONCLUSION**

Accordingly,

IT IS HEREBY ORDERED THAT:

1. Plaintiff's motion to appoint an expert witness is DENIED. Dkt. 41.

2. Plaintiff's discovery motions are DENIED. Dkts. 43, 45.

3. Plaintiff's motion for appointment of counsel is DENIED. Dkt. 46.

4. Defendant's motion for summary judgment is GRANTED. Dkt. 29.

5. The Clerk of the Court shall enter judgment, terminate all any remaining pending motions as moot, including Plaintiff's motion for an extension of time to respond to Defendant's opposition to his motion for a written deposition of a non-party (Dkt. 47), and close the file.

6. This Order terminates Docket Nos. 29, 41, 43, 45, 46, and 47.

IT IS SO ORDERED.

Dated: 9/29/14

*Saundra B. Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge

P:\PRO-SE\SBA\CR.11\Coleman3463.grantMSJ.docx